Michael A. Sirignano, Esq.
Barry I. Levy, Esq.
Joshua D. Smith, Esq.
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Plaintiffs Government Employees*
*Insurance Company, GEICO Indemnity Company,*
*GEICO General Insurance Company and*
*GEICO Casualty Company*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY,
GEICO GENERAL INSURANCE COMPANY and
GEICO CASUALTY COMPANY,                                            Docket No.: _____(        )

                                 Plaintiffs,                       **Plaintiffs Demand a Trial
                                                                   by Jury**

            -against-


M S B RX CORP. d/b/a FOREST DRUGS, TAIRA
RX CORP. d/b/a FOREST DRUGS, KZ PHARMACY
INC., MICHAEL SLAVA BASSANELL, MIKHAIL
BORUKHOV, IRINA HAKIMI, MANI
USHYAROV, D.O., JORDAN SUDBERG, M.D.,
AND JOHN DOE NOS. "1" THROUGH "5,"

                                 Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## <u>COMPLAINT</u>

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company,

GEICO General Insurance Company and GEICO Casualty Company (collectively, "GEICO" or

"Plaintiffs"), as and for their Complaint against Defendants, M S B Rx Corp. d/b/a Forest Drugs,

Taira Rx Corp. d/b/a Forest Drugs, KZ Pharmacy Inc., Michael Slava Bassanell, Mikhail

Borukhov, Irina Hakimi, Mani Ushyarov, D.O., Jordan Sudberg, M.D., and John Doe Nos. "1"

through ""5" (collectively, "Defendants"), hereby allege as follows:

1.       This action seeks to terminate a massive, on-going fraudulent scheme perpetrated

against GEICO by Defendants who have exploited the New York "No-Fault" insurance system

by submitting more than $4.35 million in bogus and fraudulent pharmaceutical billing to GEICO.

The fraudulent scheme is spearheaded by a pharmacist, Michael Slava Bassanell ("Bassanell"),

who has used a series of three pharmacies, M S B Rx Corp. d/b/a Forest Drugs (MSB Rx), Taira

Rx Corp. d/b/a Forest Drugs ("Taira Rx"), and KZ Pharmacy Inc. ("KZ Pharmacy") (collectively

the "Pharmacies") to submit thousands of fraudulent No-Fault insurance charges for medically

unnecessary, illusory, "pain relieving" prescription drug products, including compounded pain

creams, gels, ointments, and patches (collectively the "Fraudulent Pain Products") allegedly

provided to New York automobile accident victims covered by policies of insurance issued by

GEICO ("Insureds").

2.       Bassanell, working with Mikhail Borukhov ("Borukhov"), Irina Hakimi

("Hakimi"), and John Does Nos. 1 – 5, presented MSB Rx, Taira Rx, and KZ Pharmacy as

separately-owned, neighborhood pharmacies, when, in fact, the Pharmacies operated from the

same location, 112-53 Queens Boulevard, Forest Hills, New York, and have been used as part of

an integrated scheme to dispense millions of dollars of Fraudulent Pain Products pursuant to

predetermined fraudulent treatment protocols and collusive agreements with various prescribing

doctors, including defendants Mani Ushyarov, D.O. ("Ushyarov") and Jordan Sudberg, M.D.

("Sudberg") (collectively, the "Prescribing Defendants").

3.       MSB Rx, Taira Rx, KZ Pharmacy, Bassanell, Borukhov, and Hakimi

(collectively, the "Pharmacy Defendants") intentionally submitted inflated and fraudulent billing

to GEICO and other New York automobile insurers by entering into illegal, collusive arrangements with the Prescribing Defendants who generated formulaic, coded, and medically unnecessary prescriptions using labels or rubber stamps supplied by the Pharmacy Defendants in violation of law, without regard to genuine patient care.

4.     As part of the scheme, the Pharmacy Defendants steered the Prescribing Defendants to prescribe: (i) topical pain products in place of safer and far less costly over-the-counter ("OTC") medications or commercially available FDA-approved medications in order to generate huge profits for the Defendants and (ii) topical compounded pain creams and gels that the Pharmacy Defendants produced in bulk by assembling combinations of multiple drug ingredients with unproven effects in order to create exorbitantly-priced products (the "Fraudulent Compounded Drugs") that they could dispense and bill for.  The Defendants did this knowing, among other things, that there was no medical necessity for the exorbitantly priced Fraudulent Pain Products, including the Fraudulent Compounded Drugs that were supposed to be specially tailored and individualized, in order to maximize the billing that could be submitted to GEICO and other New York automobile insurers.

5.     The scheme by the Pharmacy Defendants and the Prescribing Defendants to routinely dispense to patients prescriptions for the Fraudulent Pain Products, without regard to actual medical need, not only inflated the charges but also posed serious risks to the patients' health and well-being.  For example, risks from diclofenac sodium include both gastrointestinal effects, as well as major cardiovascular events, such as heart attack and stroke.

6.     GEICO seeks to recover at least $1,542,000.00 that was stolen from it by virtue of Defendants' fraudulent scheme, which damages are to be trebled under 18 U.S.C. § 1962(c)), *et. al* to $4,626,000.00.  In addition to recovering the monies stolen from it, trebled damages, and

the attorney fees incurred by GEICO in this action, GEICO is entitled to a declaration that it is not legally obligated to pay the Pharmacies (*i.e.*, MSB Rx, Taira Rx, and KZ Pharmacy) for more than $2,000,000.00 in pending fraudulent claims the Defendants submitted or caused to be submitted through the Pharmacies. GEICO is entitled to relief because, among other things:

(i)    the Defendants prescribed, produced, and dispensed the Fraudulent Pain Products pursuant to predetermined fraudulent treatment protocols solely to financially enrich themselves, without regard for the safety or topical efficacy of the Fraudulent Pain Products or the availability of a wide range of OTC medications proven to have therapeutic effects and available at a fraction of the cost;

(ii)   the Defendants participated in illegal, collusive agreements in which MSB Rx, Taira Rx, and KZ Pharmacy solicited and received medically unnecessary prescriptions from licensed physicians and/or their associates for the Fraudulent Pain Products produced and/or dispensed by MSB Rx, Taira Rx, and KZ Pharmacy in violation of New York law prohibiting such collusive arrangements for the compounding and dispensing of specially marked prescriptions;

(iii)  MSB Rx, Taira Rx, and KZ Pharmacy engaged in illegal bulk compounding by specializing in producing and dispensing large quantities of the Fraudulent Compounded Drugs in set formulations, in violation of Federal and New York State regulatory and licensing requirements imposed on pharmacies, drug manufacturers and outsourcing facilities, rendering them ineligible to receive reimbursement for No-Fault insurance benefits;

(iv)   in the case of KZ Pharmacy, the Defendants submitted hundreds of thousands of dollars in billing to GEICO prior to the pharmacy obtaining a New York State pharmacy license, rendering KZ Pharmacy ineligible to receive reimbursement for No-Fault insurance benefits; and

(v)    in the case of Taira Rx and KZ Pharmacy, the Defendants submitted hundreds of thousands of dollars in billing to GEICO for goods and services provided by independent contractors, rendering the pharmacies ineligible to receive reimbursement for No-Fault insurance benefits.

7.      The Defendants fall into the following categories:

(i)      The Pharmacies, MSB Rx, Taira Rx, and KZ Pharmacy, are New York corporations engaged in a fraudulent scheme in which they specialize in producing and dispensing the Fraudulent Pain Products to patients and then submitting bills to GEICO and other New York automobile insurers for reimbursement to which they are not entitled;

(ii)     Bassanell, Borukhov, and Hakimi (collectively the "Owner Defendants") are the purported owners of MSB Rx, Taira Rx, and KZ Pharmacy, respectively;

(iii)    Ushyarov and Sudberg (collectively, the "Prescribing Defendants") are physicians who, in violation of New York law prohibiting collusive arrangements for the compounding and dispensing of specially marked prescriptions, entered into collusive arrangements with the Pharmacies whereby they prescribed, or purported to prescribe, the medically unnecessary Fraudulent Pain Products; and

(iv)     John Doe Defendants "1" through "5" are persons and entities, presently not identifiable, who, along with the Owner Defendants, participated in the operation and control of the Pharmacies, as well as facilitating the illegal, collusive relationships with the Prescribing Defendants.

8.      The Pharmacies, Owner Defendants, and John Doe Defendants "1" through "5" (collectively, the "Pharmacy Defendants"), began their scheme in 2015, which scheme continues uninterrupted to the present day.  As discussed more fully below, the Defendants at all times have known that: (i) the Defendants prescribed, dispensed and, in many cases, produced the Fraudulent Pain Products pursuant to predetermined fraudulent treatment protocols designed solely to financially enrich themselves, based on prescriptions solicited by the Pharmacies without regard for the safety or topical efficacy of the Fraudulent Pain Products or the availability of a wide range of FDA-approved medications, as well as OTC medications, proven to have therapeutic effects and available at a fraction of the cost; (ii) the Defendants participated

in illegal, collusive agreements in which the Pharmacies solicited and received formulaic, medically unnecessary prescriptions from licensed physicians and/or their associates for the Fraudulent Pain Products dispensed and/or produced by the Pharmacies in violation of New York law prohibiting arrangements involving the compounding and dispensing of specially marked prescriptions; and (iii) the Pharmacies engaged in illegal bulk compounding by specializing in producing and dispensing large quantities of the Fraudulent Compounded Drugs in set formulations, in violation of Federal and New York State regulatory and licensing requirements imposed on pharmacies, drug manufacturers and outsourcing facilities, rendering it ineligible to receive reimbursement for No-Fault benefits.

9.      As such, the Pharmacies do not now have – and have never had – any right to be compensated for the Fraudulent Pain Products allegedly dispensed to GEICO insureds.  The charts attached hereto as Exhibits "1" – "3" set forth the fraudulent claims that have been identified to-date which the Defendants submitted, or caused to be submitted, to GEICO.

## THE PARTIES

### I.      Plaintiffs

10.     Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company and GEICO Casualty Company are Maryland corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue automobile insurance policies in New York.

### II.     Defendants

11.     Defendant MSB Rx is a New York corporation, incorporated on or about November 6, 2008, with its principal place of business at 112-53 Queens Boulevard, Forest Hills, New York.

12.     Defendant Taira Rx is a New York corporation, incorporated on or about May 12, 2015, with its principal place of business at 112-53 Queens Boulevard, Forest Hills, New York.

13.     Defendant KZ Pharmacy is a New York corporation, incorporated on or about January 26, 2018, with its principal place of business at 112-53 Queens Boulevard, Forest Hills, New York.

14.     MSB Rx, Taira Rx, and KZ Pharmacy knowingly have submitted fraudulent claims to GEICO for the Fraudulent Pain Products, and continue to seek reimbursement on unpaid fraudulent claims.

15.     MSB Rx, Taira Rx, and KZ Pharmacy engage in pharmaceutical compounding activities and specialize in producing and dispensing compounded pain creams and gels.

16.     MSB Rx, Taira Rx, and KZ Pharmacy have, at various points in time, been registered with New York State as pharmacies, but have never been registered as manufacturers or outsourcing facilities permitted to engage in bulk compounding.

17.     MSB Rx, Taira Rx, and KZ Pharmacy are not permitted to engage in bulk compounding or specialize in dispensing large quantities of compounded pain creams and gels that are not specially tailored to the needs of individual patients.

18.     Defendant Bassanell resides in and is a citizen of New York. Bassanell was licensed to practice pharmacy in New York on September 11, 2004. Bassanell is listed as the owner of record for MSB Rx, and has been listed with the New York State Office of the Professions as the supervising pharmacist for both MSB Rx and Taira Rx.

19.     Defendant Borukhov resides in and is a citizen of New York. Borukhov is listed as the owner of record for Taira Rx.

20.     Defendant Hakimi resides in and is a citizen of New York. Hakimi, upon information and belief, is the owner of KZ Pharmacy. This belief is based upon the fact that Hakimi signed the Certification of Incorporation as Incorporator for KZ Pharmacy, filed the Certificate of Incorporation with New York State, and is listed as the registered agent for KZ Pharmacy.

21.     Ushyarov resides in and is a citizen of New York. Ushyarov was licensed to practice medicine in New York on January 19, 1996. Ushyarov knowingly has participated in a scheme to prescribe the Fraudulent Pain Products to GEICO Insureds.

22.     Sudberg resides in and is a citizen of New York. Sudberg was licensed to practice medicine in New York on October 23, 2013. Sudberg knowingly has participated in a scheme to prescribe the Fraudulent Pain Products to GEICO Insureds.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. Pursuant to 28 U.S.C. § 1331, this Court also has jurisdiction over the claims brought under 18 U.S.C. §§ 1961 et seq., the Racketeer Influenced and Corrupt Organizations ("RICO") Act, because they arise under the laws of the United States. In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

24.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Eastern District of New York is the District where one or more of the Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS COMMON TO ALL CLAIMS

### I.  An Overview of New York's No-Fault Laws

25.     GEICO underwrites automobile insurance in the State of New York.

26.     New York's "No-Fault" laws are designed to ensure that injured victims of motor vehicle accidents have an efficient mechanism to pay for and receive the healthcare services that they need. Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law §§ 5101 et seq.) and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. §§ 65 et seq.)(collectively, referred to herein as the "No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits ("No-Fault Benefits") to Insureds.

27.     No-Fault Benefits include up to $50,000.00 per Insured for necessary expenses that are incurred for health care goods and services.

28.     An Insured can assign his or her right to No-Fault Benefits to the providers of healthcare services in exchange for those services. Pursuant to a duly executed assignment, a healthcare provider may submit claims directly to an insurance company and receive payment for necessary goods and medical services provided, using the claim form required by the New York State Department of Insurance (known as the "Verification of Treatment by Attending Physician or Other Provider of Health Service," or, more commonly, as an "NF-3").  In the alternative, healthcare providers sometimes submit claims using the Health Care Financing Administration insurance claim form (known as the "HCFA-1500 Form").

29.     Pursuant to New York's No-Fault Laws (11 N.Y.C.R.R. § 65-3.16(a)(12)), a healthcare provider is not eligible to receive No-Fault Benefits if it fails to meet any applicable New York state or local licensing requirement necessary to perform such services in New York.

30.     In State Farm Mut. Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313 (2005), the New York Court of Appeals, relying on the implementing regulation, 11 N.Y.C.R.R. § 65-3.16(a)(12), made clear that healthcare providers that fail to comply with licensing requirements are ineligible to collect No-Fault benefits. The Court of Appeals further provided that insurers may look beyond a facially-valid license to determine whether there was a failure to abide by state and local law.

31.     Pursuant to New York Insurance Law § 403, the NF-3s and HCFA-1500 Forms submitted by a healthcare provider to GEICO, and to all other automobile insurers, must be verified by the health care provider subject to the following warning:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

## II.     An Overview of Applicable Licensing Laws

32.     The United States Federal Food, Drug, and Cosmetic Act ("FDCA") authorizes the United States Food and Drug Administration ("FDA") to oversee the safety of food, drugs, and cosmetics.

33.     Pursuant to New York Education Law § 6808, no person, firm, corporation or association shall possess drugs, prescriptions or poisons for the purpose of compounding, dispensing, retailing, wholesaling or manufacturing, or shall offer drugs, prescriptions or poisons for sale at retail or wholesale unless registered by the New York State Department of Education as a pharmacy, wholesaler, manufacturer or outsourcing facility.

34.     Manufacturers and outsourcing facilities that seek to register with the New York State Department of Education, as required by New York Education Law § 6808, must also

register with the FDA and be listed as a manufacturer or outsourcing facility on the FDA website.

35.     New York Education Law § 6530(38) prohibits a licensed physician from entering into an arrangement or agreement with a pharmacy for the compounding and/or dispensing of coded or specially marked prescriptions, while New York Education Law § 6811 makes it a crime for any person to enter into an agreement with a physician (or other licensed healthcare provider) for the compounding or dispensing of secret formula ("coded") prescriptions.

36.     New York Education Law § 6530(18) prohibits a licensed physician from "directly or indirectly" offering, giving, soliciting, receiving or agreeing to receive any fee or other consideration to or from a third party in exchange for patient referrals or in connection with the performance of professional services.

37.     New York Education Law § 6509-a, prohibits a professional licensee from "directly or indirectly" requesting, receiving, or participating in the division, transference, assignment, rebate, splitting, or refunding of a fee in connection with professional care or services including services related to drugs and/or medications.

38.     8 N.Y.C.R.R. § 29.1(b)(3) prohibits a professional licensee from "directly or indirectly" offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or client or in connection with the performance of professional services.

### III.   An Overview of Compounded Drug Products

39.     The FDA strictly regulates drugs, and oversees drug manufacturing in several ways, including testing drugs and routinely inspecting drug manufacturing plants and outsourcing facilities engaged in the compounding of drugs.

40.     FDA-approved drugs require: (i) approval prior to marketing; (ii) compliance with federal labelling laws; and (iii) that the drugs be made and tested in accordance with good manufacturing practice regulations (GMPs), which are federal statutes that govern the production and testing of pharmaceutical products.

41.     Pursuant to Section 503A of the Federal Food, Drug and Cosmetic Act ("FDCA"), as amended by the Compounding Quality Act, the laws applicable to drugs regulated by the FDA, including the laws relating to the safe manufacturing of drugs, generally do not apply to a "compounded" drug product: (1) if the drug product is compounded for an identified individual patient based on the receipt of a valid prescription order that a compounded product is necessary for the identified patient, and (2) if the compounding is performed by a licensed pharmacist in a state licensed pharmacy.

42.     The FDA defines traditional pharmacy compounding as the combining, mixing, or altering of ingredients to create a customized medication for an individual patient in response to a licensed practitioner's prescription. Traditional pharmacy compounding plays a role in providing access to medications for patients with unique medical needs, which cannot otherwise be met with a commercially available product. State licensed pharmacies may compound specified medications when an FDA-approved drug product is not available or appropriate for a patient, including strength or route of delivery.

43.     Compounded drugs are generally not FDA-approved, though they may include FDA-approved drugs, and are generally exempt from the FDA approval process which applies to new drugs if the drug is compounded for an identified individual patient based on the receipt of a valid prescription, approved by the prescribing practitioner on the prescription order, that a compounded product is necessary for the identified patient. See 21 U.S.C. § 353a.

44.     Unlike FDA-approved products, consumers and prescribers cannot assume that compounded drugs were made by validated processes in properly calibrated and cleaned equipment; that the ingredients in the drug were obtained from FDA-approved sources; that production personnel had the requisite knowledge and training; and that appropriate laboratory testing was performed to verify the compounded drug's potency, purity, and quality.

45.     The FDA has publicly expressed concern regarding large-scale drug manufacturing under the guise of traditional small-scale pharmacy compounding.  For example, the FDA has noted that poor practices on the part of bulk drug compounders can result in contamination or products that do not possess the strength, quality, and purity required. Published reports also consistently show that compounded drugs fail to meet specifications at a considerably higher rate than FDA-approved drugs.

46.     Traditional pharmacy compounding by state licensed pharmacies, therefore, is permissible when done on a small scale by pharmacists who prepare the medication based on an individual prescription.  Specifically, when compounded drugs meet the requirements of 21 U.S.C. § 353a and are compounded for an individual patient, they can be exempted from the requirement, among others, that they be FDA-approved. See 21 U.S.C. § 355(a) ("No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application filed pursuant to... this section is effective with respect to such drug").

47.     When Congress adopted 21 U.S.C. § 353a, its express intent was to "ensure continued availability of compounded drug products as a component of individualized therapy, while limiting the scope of compounding so as to prevent manufacturing [of drugs that would otherwise require FDA approval] under the guise of compounding." H.R. Rep. No. 105-399, at 94 (1997) (Conf. Rep.)(emphasis added).  As Congress stated at the time:

> the "exemptions in [this section] are limited to compounding for an individual patient based on the medical need of such patient for the particular drug compound. To qualify for the exemptions, the pharmacist or physician must be able to cite to a legitimate medical need for the compounded product that would explain why a commercially available drug product would not be appropriate. Although recording the medical need directly on each prescription order would not be required, this technique would be one of many acceptable ways of documenting the medical need for each compounded drug product. This medical need would not include compounding drugs that are essentially copies of commercially available drug products for largely economic reasons. The pharmacist may rely on appropriately documented input from the physician as to whether a commercially available drug product is not appropriate for the identified individual patient."

S. Rep. No. 105-43, at 67-68 (1997)(emphasis added).

48.     Because compounded products are not FDA-approved, and therefore, not subject to FDA regulations regarding quality, safety and effectiveness of manufactured drug products, they should never be prescribed as a matter of routine therapy, and should only be prescribed to meet a legitimate specific need of an individual patient, or when all other forms of oral and/or topical medications approved for the treatment of pain have failed.

49.     The prescription of compounded drug products and ensuing billing to both private and public insurers has been the subject of state and federal investigations and litigation due to increased concerns regarding fraud.  For example:

- in January 2014, the United States Attorney for the District of New Jersey obtained a guilty plea from a pharmacist who was involved with payment of

kickbacks to a physician in exchange for prescriptions for compounded pain creams and gels.  See USA v. Kleyman, 1:14-CR-598-JHR, Docket No. 1.

- in February 2016, the United States Attorney for the Northern District of Texas indicted two laypersons, who conspired with physicians and pharmacies, in a scheme involving producing, prescribing, and distributing compound creams, including payment of kickbacks to prescribing physicians and insured beneficiaries. See USA v. Cesario, 3:16-CR-060-M, Docket Nos. 3, 75.

- in June 2016, the United States Attorney for the Middle District of Florida indicted a physician who engaged in a fraudulent scheme involving payment of kickbacks for the referral of patients and prescriptions for compounded creams. See USA v. Baldizzi, 8:16CR271-MSS-AEP, Docket No. 1.

- in August 2016, the United States Attorney for the Southern District of New York indicted members of the Genovese, Gambino, Luchese, and Bonanno crime families, whose alleged illegal activities included "causing…corrupt doctors to issue unnecessary and excessive prescriptions for expensive compound cream" billed to insurers.  See USA v. Parrello, 16 Crim. 522 (2016).

50.    Further, the U.S. Department of Health & Human Services ("USDHHS") and the U.S. Postal Service have both issued reports documenting fraud concerns with compounded drugs. See High Part D Spending on Opioids and Substantial Growth in Compound Drugs Raise Concerns, HHS OIG Data Brief, OEI-16-00290 (June 2016); Worker's Compensation Compound Drug Costs, Management Advisory, Report No. HR-MA-16-003 (March 14, 2016). Most recently, USDHHS issued a report entitled Questionable Billing For Compounded Topical Drugs in Medicare Part D, OEI-02-16-00440 (August 2018), which noted that many pharmacies in New York State are among the most questionable in the nation.

## IV.    The Defendants' Scheme Involving The Fraudulent Pain Products

51.    The Pharmacy Defendants masterminded and implemented a fraudulent scheme in which they used the Pharmacies to bill the New York automobile insurance industry for millions of dollars in inflated charges – which they were not eligible to receive – relating to the

Fraudulent Pain Products, including the Fraudulent Compounded Drugs, purportedly provided to Insureds.

52.     The Pharmacy Defendants, spearheaded by Bassanell, utilized three pharmacy corporations in successive fashion at the same location, 112-53 Queens Boulevard, Forest Hills, New York, in order to limit the volume of fraudulent billing submitted through any one entity, conceal the true volume of fraudulent billing submitted to GEICO, and obfuscate legitimate investigation into their unlawful arrangements with the Prescribing Defendants.

A.      **The Defendants' Various Corporate Identities and Purported Changes in Ownership**

53.     In furtherance of Defendants' massive fraudulent scheme, the Defendants created three pharmacy entities, owned on paper by three different individuals, but in actuality owned and controlled at all times by the same group of individuals, including Bassanell and John Doe Nos. "1" through "5".

54.     Initially, Bassanell incorporated MSB Rx in 2008 in order operate a pharmacy at 112-53 Queens Boulevard, Forest Hills, New York.  Bassanell acted as the supervising pharmacist for MSB Rx in addition to being MSB Rx's sole owner.

55.     In or about September 2015, Bassanell entered into a sham agreement with Borukhov whereby Bassanell purported to sell MSB Rx's assets and transfer MSB Rx's New York State pharmacy license to Borukhov, whereby Borukhov would purport to own and operate a company under his own name, known as Taira Rx.

56.     In actuality, Bassanell continued to own and control Taira Rx and the pharmacy practice located at 112-53 Queens Boulevard, Forest Hills, New York.

16

57.     In keeping with the fact that the sale and transfer to Borukhov was a sham, following the sale and transfer Bassanell continued to own another licensed pharmacy, Satya Drug Corp. d/b/a Farmacia Central, located just four doors down from Taira Rx at 113-07 Queens Boulevard, Forest Hills, New York.

58.     There was no legitimate business reason for Borukhov to purchase MSB Rx's assets and pharmacy license from Bassanell while Bassanell continued to own and operate a second pharmacy four doors down the street.

59.     Rather, Bassanell and Borukhov entered into the sham agreement to conceal the true volume of fraudulent billing the Defendants were submitting to GEICO from the pharmacy practice located at 112-53 Queens Boulevard, Forest Hills and to obfuscate any legitimate investigation by GEICO and any other insurance company into MSB Rx's fraudulent billing practices and illegal collusive arrangements with prescribing physicians, including the Prescribing Defendants.

60.     In fact, following the purported sale and transfer, MSB Rx continued operating virtually all aspects of the pharmacy at 112-53 Queens Boulevard, Forest Hills even though it was now known by the name Taira Rx, including supplying and paying all employees, and ordering and paying for all of the inventory of drug products purchased from drug wholesalers.

61.     In particular, the purported employees of Taira Rx continued to be paid from MSB Rx's corporate bank account and continued to receive W-2s from MSB Rx, while Taira Rx's other business expenses, including invoices from prescription drug wholesalers, continued to be paid by MSB Rx.

62.     Furthermore, despite purportedly selling MSB Rx's assets and pharmacy license to Borukhov, Bassanell remained at the pharmacy located at 112-53 Queens Boulevard, Forest

Hills to supposedly continue in his role as supervising pharmacist. In actuality, Bassanell continued to own and control Taira Rx.

63.     In early 2018, in a further effort to conceal their fraudulent scheme, the Defendants arranged for Borukhov to sell Taira Rx's assets and pharmacy license to Irina Hakimi, so that Hakimi could purport to own and operate KZ Pharmacy at the same location, 112-53 Queens Boulevard, Forest Hills.

64.     In actuality, Bassanell continued to own and control KZ Pharmacy and the pharmacy practice located at 112-53 Queens Boulevard, Forest Hills.

65.     In fact, Bassanell is registered with the New York State Office of Professions as the supervising pharmacist for KZ Pharmacy.

66.     In keeping with the fact that the sale of Taira Rx's assets to Hakimi was a sham to further conceal the fact that ownership and management of the pharmacy practice located at 112-53 Queens Boulevard, Forest Hills remained under the control of Bassanell, Borukhov had no idea that he purportedly sold Taira Rx's assets and pharmacy license to Irina Hakimi, who is the listed owner of KZ Pharmacy, believing instead that *he* owned KZ Pharmacy.

67.     In further keeping with the fact that ownership and management of the pharmacy practice at 112-53 Queens Boulevard, Forest Hills remained the same after the purported sale to Hakimi, on multiple occasions the Pharmacy Defendants attempted to deposit a check issued by GEICO to KZ Pharmacy into a Taira Rx bank account, despite the fact that the two pharmacies are owned – on paper at least – by two different individuals.

68.     In addition, the Pharmacy Defendants submitted hundreds of thousands of dollars in billing to GEICO under the name of KZ Pharmacy, even though KZ Pharmacy had not yet obtained a pharmacy license in New York State.

69.     Specifically, between December 4, 2017 and May 7, 2018 the Defendants submitted hundreds of thousands of dollars in billing to GEICO under the name of KZ Pharmacy, even though KZ Pharmacy did not obtain a New York State pharmacy license until May 8, 2018.

70.     Despite the purported changes in ownership, the pharmacy at 112-53 Queens Boulevard, Forest Hills continued to receive the same types of fraudulent prescriptions from many of the same prescribing physicians, including prescriptions for the Fraudulent Pain Products.

71.     At all times, Bassanell and John Doe Nos. "1" through "5" have exercised control and decision-making authority relating to the operation and management of the Pharmacies.

72.     Borukhov and Hakimi are the owners, in name only, of Taira Rx and KZ Pharmacy, respectively, and serve in those roles solely to create the appearance that MSB Rx, Taira Rx, and KZ Pharmacy are small, neighborhood pharmacies.

73.     Despite purporting to be small neighborhood pharmacies MSB Rx, Taira Rx, and KZ Pharmacy have dispensed large quantities of the Fraudulent Compounded Drugs.

74.     MSB Rx, Taira Rx, and KZ Pharmacy have dispensed the Fraudulent Compounded Drugs, which are not approved by the FDA, in set formulations, without tailoring the medications to the individual needs of any individual patient, and without complying with licensing requirements that are designed to ensure the quality, safety, and effectiveness of bulk compounded drug products.

75.     MSB Rx, Taira Rx, and KZ Pharmacy, rather than dispensing commercially available, FDA-approved medications with proven efficacy, intentionally produced and dispensed exorbitantly priced compounded pain creams and gels (i.e., the Fraudulent

Compounded Drugs) by intentionally assembling combinations of expensive drug ingredients without regard to the absence of any proven topical efficacy of the combination of ingredients.

76.     MSB Rx, Taira Rx, and KZ Pharmacy billed GEICO approximately $1,070.76 to $2,364.00 for each single tube of compounded pain cream.

77.     The Defendants knew that the topical efficacy of the voluminous Fraudulent Compounded Drugs that MSB Rx, Taira Rx, and KZ Pharmacy produced and dispensed was unproven and knew that there were a wide range of commercially available, FDA-approved medications proven to have therapeutic effects available at a fraction of the cost.

78.     The Defendants knew that there was no legitimate medical need for the Fraudulent Compounded Drugs that could explain why a commercially available drug product would not be appropriate for the patients who were instead prescribed and dispensed the exorbitantly-priced compounded pain creams and gels.

79.     The Pharmacy Defendants, solely to maximize profits, had MSB Rx, Taira Rx, and KZ Pharmacy produce large quantities of compounded drugs in set formulations and dispense other exorbitantly priced Fraudulent Pain Products, as part of collusive arrangements made with licensed physicians and their associates (i.e., the "Prescribing Defendants ") to compound and dispense specially marked, formulaic prescriptions.

80.     The Pharmacy Defendants gave out pre-printed labels and/or rubber stamps to licensed physicians and others, which contained the names and ingredients of the Fraudulent Pain Products that were created, produced, and/or dispensed by MSB Rx, Taira Rx, and KZ Pharmacy.

81.     The Pharmacy Defendants, using the pre-printed labels and/or rubber stamps, arranged to have the Prescribing Defendants issue coded, predetermined prescriptions, so that the

Fraudulent Pain Products could be dispensed and billed pursuant to the Defendants' predetermined, fraudulent treatment protocol.

82.     Specifically, in furtherance of the fraudulent scheme, the Prescribing Defendants, operating from No-Fault Clinics that treat thousands of Insureds, purported to prescribe the medically unnecessary and illusory Fraudulent Pain Products to the Insureds, which in turn permitted the Pharmacy Defendants to bill GEICO for the Fraudulent Pain Products under the names of MSB Rx, Taira Rx, and KZ Pharmacy.

83.     To conceal the scheme, the Pharmacy Defendants presented MSB Rx, Taira Rx, and KZ Pharmacy as legitimate, neighborhood pharmacies engaged in the lawful practice of pharmacy and drug compounding in response to valid prescriptions received from the Prescribing Defendants.

84.     Notwithstanding the Pharmacy Defendants' attempt to conceal the scheme and present MSB Rx, Taira Rx, and KZ Pharmacy as neighborhood pharmacies, Bassanell and the other Defendants directly violated New York State and Federal regulatory and licensing requirements that govern large-scale drug compounders, drug manufacturers and outsourcing facilities and which prohibit collusive arrangements for compounding and/or dispensing of coded or specially marked prescriptions – all of which poses a significant threat to the health and safety of the patients.

85.     The Fraudulent Compounded Drugs produced by MSB Rx and Taira Rx (i) were not medically necessary; (ii) contained a combination of ingredients that produced no significant difference between the compounded drug and comparable commercially available products; (iii) were almost never prescribed properly under the governing regulations; and (iv) were "prescribed" and produced in large quantities without regard to medical necessity or the

regulations governing the appropriate use of compounded drug products, as part of unlawful arrangements with the Prescribing Defendants.

86.     In short, the scheme speared by Bassanell, involving the production and dispensing of the Fraudulent Compounded Drugs by MSB Rx, Taira Rx, and KZ Pharmacy, which were prescribed by the physicians and their associates working in collusion with MSB Rx, Taira Rx, and KZ Pharmacy, served no purpose other than to exploit the Insureds' No-Fault benefits so as to financially benefit the Defendants.

**B.     <u>The Fraudulent Diclofenac Prescriptions</u>**

87.     The Pharmacy Defendants routinely billed GEICO for exorbitantly priced diclofenac sodium gel ("Diclofenac Gel") and diclofenac sodium patch ("Diclofenac Patch") prescriptions, purportedly prescribed by several physicians, including the Prescribing Defendants.

88.     The FDA requires that diclofenac sodium prescriptions contain a "black box" warning indicating serious cardiovascular and gastrointestinal risks.

89.     A "black box" warning is the strictest warning attached to the labeling of a prescription drug or product by the FDA and is designed to call attention to serious or life-threatening risks associated with the drug or product.

90.     Specifically, every diclofenac sodium prescription is required by the FDA to warn the patient that: (i) diclofenac sodium may cause an increased risk of serious cardiovascular thrombotic events, myocardial infarction, and stroke, which can be fatal; and (ii) diclofenac sodium cause an increased risk of serious gastrointestinal adverse events including bleeding, ulceration, and perforation of the stomach or intestines, which can be fatal.

91. Nevertheless, the Prescribing Defendants, among others, routinely routed diclofenac sodium prescriptions to the Pharmacy Defendants, oftentimes, in addition to directing the Insureds to continue with OTC non-steroidal anti-inflammatory drugs ("NSAIDs"), e.g., ibuprofen or naproxen.

92. The Prescribing Defendants prescribed diclofenac sodium in conjunction with OTC NSAIDs to numerous Insureds, despite the risks it posed to Insured's health and well-being.

93. The Diclofenac Gels were prescribed pursuant to predetermined treatment protocols and without regard for patient care and safety, or the commercial availability of a wide range of FDA-approved medications, as well as OTC medications, proven to have therapeutic effects and available at a fraction of the cost.

94. In keeping with the fact that diclofenac sodium was being prescribed and dispensed pursuant to predetermined treatment protocols and without regard for patient care and safety, the initial examination reports prepared by the prescribing physicians virtually never stated the medical basis for the prescriptions and, in some cases, failed to acknowledge that the patient was even being prescribed diclofenac sodium.

95. In further keeping with the fact that the Diclofenac Gels and Patches were prescribed and dispensed pursuant to predetermined treatment protocols and without regard for patient care, the follow-up examination reports prepared by the prescribing physicians virtually never addressed whether the Diclofenac Gels and Patches were effective or not, to what degree, or whether the patients experienced any side effects.

96. Not surprisingly, the OIG in its August 2018 report on questionable billing for topical compounded drugs, noted that one of the most common products billed for by pharmacies

with questionable billing was diclofenac sodium because, among other reasons, there is a striking difference between the cost of a compounded topical containing diclofenac sodium and a non-compounded version of the same drug.

97.     There is no legitimate medical reason for the Prescribing Defendants to prescribe large volumes of Diclofenac Gels and Patches to Insureds, particularly given the potential for adverse health effects.

98.     But for the payments of kickbacks from the Pharmacy Defendants, generated from the exorbitant charges for compounded diclofenac sodium, the Prescribing Defendants would not have prescribed the predetermined, medically unnecessary Diclofenac Gels and Patches and would not have directed the prescriptions to the Pharmacy Defendants.

99.     The Pharmacy Defendants and the Prescribing Defendants have affirmatively concealed the particular amounts paid for the kickbacks since such kickbacks are in violation of New York law.

100.     Nevertheless, based on the circumstances surrounding the illegal, collusive, arrangements, the Pharmacy Defendants paid a financial kickback, and the Prescribing Defendants received a financial kickback, for each of the particular prescriptions for the Diclofenac Gels and Patches that were dispensed by the Pharmacies.  The payment of such kickbacks was made at or near the time the prescriptions were issued.

C.     **The Fraudulent Compounded Drugs**

1.     **MSB Rx and Taira Rx Specialized in Large Scale Drug Compounding Activity in Violation of New York State and Federal Law Governing Drug Manufacturers and Outsourcing Facilities**

101.     As stated above, compounded drug products are only appropriate in limited circumstances, should be formulated for an individual patient's needs upon receipt of a valid

prescription for an identified individual or a notation on a prescription stating that a compounded product is necessary for the identified patient, and should not be prescribed and dispensed as a matter of course.

102.    The Pharmacy Defendants, however, blatantly exploited the No-Fault insurance reimbursement system by entering into collusive relationships involving the marketing and soliciting of prescriptions for the same predetermined Fraudulent Compounded Drugs that were dispensed again and again to numerous Insureds involved in minor fender-bender type accidents, generating millions of dollars in fraudulent billing to New York automobile insurers.

103.    MSB Rx, Taira Rx, and KZ Pharmacy, acting under the guise of neighborhood pharmacies, intentionally assembled a combination of expensive drug ingredients solely to produce exorbitantly priced topical compounded pain creams and gels that they could use to generate huge volumes of inflated billing, as part of collusive, steering relationships with the Prescribing Defendants.

104.    In furtherance of the scheme, the Pharmacy Defendants gave the Prescribing Defendants a series of labels or rubber stamps that contained the name of the compounded pain cream and the formulation, including the names of the particular drug ingredients and percentage concentrations of each ingredient used.

105.    Specifically, the MSB Rx, Taira Rx, and KZ Pharmacy routinely produced, marketed, and dispensed, among others, the following predetermined, formulaic Fraudulent Compounded Drugs:

- Compound DL, with the following ingredients:
  - Diclofenac sodium
  - Lidocaine

- Compound DBCGT pain cream (also called Compound D7), with the following ingredients:
  - o Baclofen
  - o Cyclobenzaprine hydrochloride
  - o Tetracaine hydrochloride
  - o Gabapentin
  - o Diclofenac sodium
  - o Versapro cream base

- COMP0-0001-94 with the following ingredients
  - o Ketoprofen
  - o Lidocaine
  - o Amitriptyline
  - o Baclofen
  - o Clonidine
  - o Dimethyl sulfoxide
  - o Gabapentin
  - o Versapro cream base

106.    MSB Rx and Taira Rx typically billed: (i) between $1,218.02 and $2,364.00 for single tube of Compound DL; and (ii) between $1,218.02 and $2,141.10 for a single tube of Compound DBCGT.

107.    KZ Pharmacy typically billed between $1,070.76 and $1,557.94 for single tube of COMP0-0001-94.

108.    The Fraudulent Compounded Drugs were not created or prescribed by the Prescribing Defendants to meet the unique needs of any individual patient.

109.    Instead, the Fraudulent Compounded Drugs were produced and dispensed by MSB Rx, Taira Rx, and KZ Pharmacy in large quantities without regard to the unique needs of any individual patient.

110.    The Pharmacy Defendants never cited a legitimate medical need for Fraudulent Compounded Drugs that would explain why a commercially available drug product was not appropriate to dispense to the Insureds who received the Fraudulent Compounded Drugs.

111.    Likewise, the Prescribing Defendants never cited a legitimate medical need for Fraudulent Compounded Drugs that would explain why a commercially available drug product was not appropriate to prescribe for the Insureds who received the Fraudulent Compounded Drugs.

112.    As part of the collusive arrangement with the Prescribing Defendants, the Pharmacy Defendants produced and distributed the predetermined and Fraudulent Compound Pain Creams, together with a series of "prescription labels" or "prescription rubber stamps," bearing the names, ingredients, and concentrations of those predetermined and formulaic compounded products, which the Prescribing Defendants then used to imprint their official New York State prescription pads to prescribe the Fraudulent Compounded Drugs to the Insureds.

113.    Through the use of the specially marked, or coded prescriptions, with the "prescription labels" or "prescription rubber stamps," the Pharmacy Defendants steered the Prescribing Defendants to prescribe the Fraudulent Compounded Drugs as part of a predetermined treatment and billing scheme.

114.    Despite the fact that traditional pharmacy compounding requires the combining, mixing, or altering of ingredients to create a customized medication for an individual patient in response to a licensed practitioner's prescription, the prescription labels and/or rubber stamps indicate that the Pharmacy Defendants created predetermined compounded drug products that were produced in bulk.

115.    Accordingly, the Fraudulent Compounded Drugs, prescribed by the Prescribing Defendants, and produced by the Pharmacy Defendants, were not customized for individual patients.

116.    A sample of MSB Rx, Taira Rx, and KZ Pharmacy's bills and the accompanying prescriptions allegedly issued by the Prescribing Defendants containing labels or rubber stamps, used to prescribe the Fraudulent Compounded Drugs to Insureds, and which the Defendants submitted to GEICO in support of their fraudulent billing, is annexed hereto as Exhibit "4".

117.    MSB Rx, Taira Rx and KZ Pharmacy, by specializing in creating and dispensing large volumes of the Fraudulent Compounded Drugs, engaged in bulk compounding activity (akin to that engaged in by drug manufacturers and outsourcing facilities) as opposed to compounding individual prescriptions on a case-by-case basis upon receipt of a valid prescription order.

118.    The Pharmacy Defendants' creation and dispensation of predetermined, compounded drug products in large volumes, renders MSB Rx, Taira Rx, and KZ Pharmacy in violation of both state and federal licensing laws regulating the safe manufacturing of drugs.

119.    MSB Rx, Taira Rx, KZ Pharmacy, and the Fraudulent Compounded Drugs are not exempt from FDA oversight and approval, and similar New York State licensing requirements applicable to drug manufacturers and outsourcing facilities, because the Fraudulent Compounded Drugs were clearly not individualized and tailored to meet specific individual patient needs, were not provided pursuant to legitimate prescriptions, and were illegally compounded in set formulations in large quantities. See 21 U.S.C. § 355 and 21 U.S.C. 353a(a).

120.    Furthermore, as drug manufacturers and dispensers, the Pharmacy Defendants violated 21 U.S.C. § 355(a) which states that "no person shall introduce or deliver for introduction into interstate commerce any new drug" without first obtaining approval to do so by way of an application filed with the Secretary with respect to that drug.

121.    A "new drug" – as defined by 21 U.S.C. § 321(p)(1) – is "any drug…the composition of which is such that such drug is not generally recognized…as safe and effective for use under the conditions prescribed, recommended or suggested in the labeling thereof."

122.    MSB Rx, Taira Rx, and KZ Pharmacy's Fraudulent Compounded Drugs – for which the Pharmacy Defendants have billed GEICO alone hundreds of thousands of dollars – have never been FDA-approved and, therefore, were never verified by the FDA as being safe, effective or quality products.  In fact, MSB Rx, Taira Rx, and KZ Pharmacy's bulk compounding and dispensing of the Fraudulent Compounded Drugs exposed Insureds to widespread risks including harmful contraindications, which is why they should have only been prescribed under unique circumstances in limited circumstances.

### 2.    The Prescription and Dispensation of MSB Rx, Taira Rx, and KZ Pharmacy's Compounded Drugs Was Contrary to Evidenced-Based Medical Practices

123.    In keeping with the fact that the Fraudulent Compounded Drugs were prescribed pursuant to the Defendants' fraudulent scheme intended to generate profits from insurers, MSB Rx, Taira Rx, KZ Pharmacy's Fraudulent Compounded Drugs (i) had no medical efficacy based on the purported symptoms of the patients receiving the compounded products and (ii) were prescribed without any legitimate reason to provide the patients with expensive compounded products – which include drugs whose efficacy in topical form is undocumented and unsupported – when there are many other widely accepted, proven effective alternatives with well documented therapeutic benefits commercially available at considerably lower costs.

124.    Evidence-based guidelines for the treatment of acute pain do exist and should always guide prescribing habits. The World Health Organization ("WHO") pain relief ladder recommends a non-opioid such as acetaminophen or a nonsteroidal anti-inflammatory drug

("NSAID") for the initial management of pain. NSAIDs are the most commonly prescribed analgesic medications worldwide, and their efficacy for treating acute pain has been well demonstrated. If pain relief is not achieved, and doses are maximized, then an adjuvant oral agent may be added to the medication regimen – including the use of muscle relaxers, and medications that block neuropathic pain transmission. Finally, opiates may be prescribed for short-term, limited use. Clinical studies of FDA-approved topical NSAIDs have shown them to be no more effective than placebo for treating acute pain (e.g., from strains, sprains, contusions, or overuse injuries) in superficial locations.

125.    Because compounded products, like the ones dispensed by MSB Rx, Taira Rx, and KZ Pharmacy are not FDA-approved – and therefore not subject to FDA regulations regarding quality, safety and effectiveness of manufactured drug products – they should never be prescribed as routine therapy.

126.    Because compounded products, like the ones dispensed by MSB Rx, Taira Rx, and KZ Pharmacy, are not FDA-approved – and therefore not subject to FDA regulations regarding quality, safety and effectiveness of manufactured drug products – they should only be prescribed to meet a legitimate specific need of an individual patient, or when all other forms of oral and/or topical medications approved for the treatment of pain have failed, or there is a contraindication for use.

127.    Topical compounded creams should be the last prescribed intervention, after oral medications are not tolerated or are deemed ineffective, as well as after any FDA-approved manufactured topical products have been shown to provide no pain relief to the patient.

128.    For a topical formulation to be effective, it must first penetrate the skin.  In general, creams are less effective than gels or sprays.

129.    The skin is composed of three layers: epidermis, dermis, and hypodermis.  Within the epidermis, the stratus corneum is the outermost layer of the skin that serves as the main barrier to drug entry.  For analgesic medicines to be absorbed through the skin, they must contain optimal drug combinations, effective concentrations of each drug, and a compounding base with the appropriate physiochemical properties to facilitate absorption.

130.    In order for a drug to alleviate pain, it must reach nerve or tissue receptors responsible for producing or transmitting a person's sensation of pain.

131.    Oral pain relievers reduce or alleviate pain by entering the bloodstream through the gastrointestinal system and traveling to the relevant nerve or tissue receptors. Some of the limited circumstances in which a physician would prescribe a topical medication include patients in whom these oral medications are contraindicated – those with moderate to severe kidney or liver dysfunction, or those with comorbidities that preclude the use of oral nonsteroidal anti-inflammatory drugs (e.g., history of peptic ulcer disease or congestive heart failure).

132.    Many of MSB Rx, Taira Rx, and KZ Pharmacy's Fraudulent Compounded Drugs contain combinations of drugs that make no clinical sense and have no efficacious value in treating musculoskeletal and neuropathic injuries – even assuming that the Insureds the Prescribing Defendants treated actually suffered from such injuries.

133.    There are no published, peer-reviewed, controlled studies to support that patients who suffer from musculoskeletal pain or neuropathy have achieved any therapeutic effect from using topical pain creams containing the drugs that are part of the Fraudulent Compounded Drugs.

134.    Further, many of the Fraudulent Compounded Drugs are available in alternative oral formulations or are commercially available in different topical formulations.

135.    The alternatives to the Fraudulent Compounded Drugs, whether in oral formulations or commercially available topical formulations, have proven to therapeutically benefit patients with musculoskeletal and neuropathic pain, are FDA-approved, and are commonly prescribed by healthcare providers who utilize evidence-based medicine for their prescribing practices.

136.    Contrary to evidenced-based medical practices, the Fraudulent Compounded Drugs were routinely prescribed by the Prescribing Defendants and administered without regard to whether other forms of oral and/or topical medications approved for the treatment of pain have failed, or there was a contraindication for their use.

137.    The Prescribing Defendants failed to practice evidence-based medicine; rather, the Prescribing Defendants prescribed the Fraudulent Compounded Drugs based on their illegal, collusive arrangements with the Pharmacy Defendants that employed a fraudulent predetermined treatment and billing protocol designed to enrich all of the Defendants.

138.    Tellingly, the Prescribing Defendants often prescribed the Fraudulent Compounded Drugs during periodic visits to the various No-Fault medical mills, without any review of the primary treating doctor's notes or records, and without any consultation with such practitioner.

139.    Even if the Prescribing Defendants knew about, and authorized, the prescriptions for particular Fraudulent Compounded Drugs, the Prescribing Defendants failed to recommend that the Insureds first try over-the-counter FDA-approved oral and topical medications and assess their effectiveness, prior to prescribing the Fraudulent Compounded Drugs produced and dispensed by the Pharmacy Defendants in large quantities.

140.    The Prescribing Defendants also did not document in their examination reports that the patients were intolerant of, or unresponsive to, commercially available products.

141.    The Prescribing Defendants also did not document in their examination reports why any compounded drug product was medically necessary, or why the particular Fraudulent Compounded Drug they ultimately prescribed for the patient was medically necessary.

142.    The Prescribing Defendants also failed to document in their follow-up examination reports whether the Fraudulent Compounded Drug prescribed to a particular patient was actually used by the patient.

143.    The Prescribing Defendants also failed to document in their follow-up examination reports whether the Fraudulent Compounded Drug provided any pain relief to the patient or was otherwise effective for the purpose prescribed.

144.    The Prescribing Defendants also failed to prescribe individually tailored compounded products, made for an identified individual Insured, which provided superior efficacy than comparable commercially available products.

145.    Likewise, MSB Rx, Taira Rx, and KZ Pharmacy never dispensed individually tailored compounded products, made for an identified individual Insured, which provided superior efficacy than comparable commercially available products.

### 3.    The Fraudulent Compounded Drugs Were Prescribed and Dispensed Without Regard to Genuine Patient Care

146.    In basic terms, the goal of medical treatment is to help patients get better in a timely manner.   Notwithstanding this basic goal, the Insureds treated by the Prescribing Defendants were virtually always subjected to a predetermined treatment protocol, which was both unnecessarily prolonged and totally lacking in individualized care, which did not utilize

evidence based practices with the goal of the Insureds' safe and timely return to good health. Conversely, the treatment reports almost uniformly reflected that the Insureds treated by the Prescribing Defendants did not get better, did not return to good health, and/or did not experience improvement in their conditions such that the Insureds could terminate medical treatment expeditiously and return to normal activity.

147.    As part of the predetermined protocol, the Prescribing Defendants produced examination reports that were generic, preprinted, and boilerplate, designed to justify continuing, voluminous, and excessive healthcare services that the No-Fault Clinic providers purported to render to Insureds thereafter, including the prescription of Fraudulent Compounded Drugs.

148.    Notwithstanding the creation of the examination reports, the Prescribing Defendants' prescriptions of the Fraudulent Compounded Drugs were not medically necessary and were based on a predetermined protocol, provided without regard to the genuine needs of the patients.

149.    To the extent any examination was actually performed at all, the Prescribing Defendants failed to document a detailed medical history of the patients to whom they prescribed the Fraudulent Compounded Drugs.  Prescribing compounded products without first taking a detailed patient history demonstrates a gross indifference to patient health and safety as the Prescribing Defendants often did not know whether the patient was currently taking any medication or suffering from any co-morbidities that would contraindicate the use of a compounded drug product.

150.    The Prescribing Defendants' failure to document a detailed medical history of the patients to whom they prescribed the Fraudulent Compounded Drugs is also indicative that the Prescribing Defendants did not prescribe the compounded drug products to meet the unique

needs of a particular patient that could not be met with an existing FDA-approved medication because the inadequate examinations would not be able to identify any such unique needs.

151.     What is more, the Prescribing Defendants' initial examination reports and follow-up examination reports made no mention whatsoever of the specific Fraudulent Compounded Drugs the Insureds were prescribed. The follow up exams, in particular, failed to document the result of the prescribed compound.

152.     The Prescribing Defendants' inadequate initial examination and follow-up examination reports provide further evidence that (i) the Fraudulent Compounded Drugs were not medically necessary and were provided and billed for pursuant to a predetermined fraudulent treatment protocol; (ii) the Fraudulent Compounded Drugs were not individually tailored to meet the unique needs of a particular patient in response to a valid prescription and, therefore, not FDA-exempt; (iii) the Pharmacy Defendants and the Prescribing Defendants were engaged in collusive steering arrangements in violation of New York law; and (iv) MSB Rx, Taira Rx, and KZ Pharmacy are not neighborhood pharmacies, but are illegal manufacturers and producers of predetermined, mass produced drug products acting in violation of law.

### D.     The Fraudulent Pain Patches

153.     In addition to engaging in large-scale drug manufacturing under the guise of pharmacy compounding and dispensing medically unnecessary Diclofenac gels, the Prescribing Defendants prescribe and the Pharmacy Defendants purport to dispense various pain patches – including Terocin Patches, Lidoderm Patches, Levatio Patches, and Flector Patches – by means of the Fraudulent Scripts.

154.     In keeping with the fact that the Fraudulent Pharmaceuticals are prescribed pursuant to predetermined treatment and billing protocols designed to maximize profits without

regard to patient care, the Defendants prescribe, dispense and bill for Pain Patches at exorbitant prices despite the fact that there are other, less expensive, commercially available FDA approved patches available.

155.    For example, the Pharmacy Defendants dispensed and billed for Terocin 4% patches – a non-prescription item – at $1,892.00 for ten patches.  Not only are Terocin Patches available for purchase at a fraction of that price, but in addition to menthol, the primary ingredient in Terocin Patches is Lidocaine which itself is available in an FDA approved patch for a fraction of the cost.

156.    As with the Fraudulent Compounded Drugs, many patients are not aware they are to receive any Pain Patches until the patches are given to them by the receptionists at the No-Fault Clinics or are mailed to the patients' homes.

157.    In keeping with the fact that the Defendants act with gross indifference to patient care and safety, the patients are generally not instructed on the safe use, side effects or risks associated with the Pain Patches which may include blood toxicity, eye irritation from inadvertent contact, and symptoms of overdose if not used correctly.

E.    **The Illegal, Collusive Arrangements Between the Pharmacy Defendants and the Prescribing Defendants**

158.    In furtherance of the fraudulent scheme, the Defendants participated in illegal, collusive arrangements in which the Prescribing Defendants named herein (along with the other prescribing providers), prescribed the medically unnecessary Fraudulent Pain Products in violation of New York law.

159.    New York's statutory framework specifically prohibits collusive arrangements between licensed physicians and pharmacies involving compounded or specially marked prescriptions.

See Education Law § 6530(38) and § 6811 (7).  In fact, Education Law § 6811 (7) makes such agreements criminal.

160.    Here, the Pharmacy Defendants arranged with various No-Fault Clinics that treat thousands of Insureds to have the licensed physicians and/or their associates operating therefrom, including the Prescribing Defendants, prescribe, or purport to prescribe, the medically unnecessary and illusory Fraudulent Compounded Drugs to the Insureds, which in turn permitted the Pharmacy Defendants to bill GEICO huge sums under the names of MSB Rx, Taira Rx, and KZ Pharmacy.

161.    In furtherance of the scheme, the Prescribing Defendants intentionally prescribed, or purported to prescribe, the Fraudulent Pain Products to patients of the No-Fault Clinics pursuant to the Defendants' fraudulent predetermined treatment and billing, without regard to genuine patient care and safety, without regard to pharmacologic outcomes, and without regard to cost and attention to fiscal responsibility.

162.    In furtherance of the scheme, the Prescribing Defendants prescribed, or purported to prescribe, the Fraudulent Pain Products to patients of the No-Fault Clinics pursuant to formulaic, coded "prescriptions," rubber-stamped with the name and formula of one of the Fraudulent Pain Products produced or dispensed by MSB Rx, Taira Rx, and KZ Pharmacy.

163.    The Pharmacy Defendants supplied pre-set labels or rubber-stamps to the Prescribing Defendants, who used the stamp or label on their New York State prescription forms in order to repeatedly issue predetermined, formulaic, and unnecessary compounded pharmaceuticals designed to exploit the patients' No-Fault insurance benefits.

164.    In fact, the Prescribing Defendants prescribed, or purported to prescribe, the Fraudulent Compounded Drugs to patients of the No-Fault Clinics, despite their knowledge that

the Fraudulent Compounded Drugs were not customized or tailored to the individual needs of a particular patient; despite their knowledge that there were FDA-approved drugs available and appropriate for the particular patients; and despite their knowledge that the Fraudulent Compounded Drugs were medically unnecessary, and were being prescribed without regard to pharmacologic outcomes or cost and attention to fiscal responsibility.

165.    The Pharmacy Defendants never gave the prescriptions to the Insureds to fill (even though the prescriptions were paper prescriptions) and did not give the Insureds the option to use a pharmacy of their choosing.

166.    The Pharmacy Defendants directed the prescriptions for the Fraudulent Compounded Drugs to MSB Rx, Taira Rx, and KZ Pharmacy – and no other pharmacies – because the prescriptions were only being issued because of the illegal, collusive arrangements among the Pharmacy Defendants and the Prescribing Defendants.

167.    MSB Rx, Taira Rx, and KZ Pharmacy purported to mail or deliver the Fraudulent Compounded Drugs directly to the Insureds' homes, without the patient ever receiving the actual written prescription and, in many cases, without the patient even knowing that they were to receive a pain cream or patch.

168.    Alternatively, the Insureds sometimes were given the Fraudulent Pain Product directly from the front desk staff at the various No-Fault Clinics without ever seeing the actual prescription or, in many cases, without even knowing that they were to receive a pain cream or patch.

169.    In order to ensure that the prescriptions were filled by MSB Rx, Taira Rx, and KZ Pharmacy and to ensure that the Pharmacy Defendants benefitted financially from the

prescriptions, the Prescribing Defendants did not give the Insureds the option to identify a pharmacy of their choosing.

170.    The Prescribing Defendants had no legitimate medical reason to prescribe the predetermined, medically unnecessary Fraudulent Pain Products in large quantities to their patients.

171.    The Prescribing Defendants would not have engaged in the illegal, collusive arrangements with the Pharmacy Defendants in violation of New York law, including using rubber stamps or labels distributed by the Pharmacy Defendants, intentionally prescribing medically unnecessary Fraudulent Pain Products, and directing those prescriptions to MSB Rx, Taira Rx, and KZ Pharmacy, unless they profited from their participation in the illegal scheme.

172.    But for the payments of kickbacks from the Pharmacy Defendants, the Prescribing Defendants would not have prescribed the predetermined, medically unnecessary Fraudulent Compounded Drugs, which were not individually tailored to meet a unique need of any particular patient, and would not have directed the prescriptions to MSB Rx, Taira Rx, and KZ Pharmacy.

173.    The Pharmacy Defendants and the Prescribing Defendants have affirmatively concealed the particular amounts paid for the kickbacks since such kickbacks are in violation of New York law.

174.    Nevertheless, based on the circumstances surrounding the illegal, collusive, arrangements, the Pharmacy Defendants paid a financial kickback, and the Prescribing Defendants received a financial kickback, for each of the particular prescriptions for the Fraudulent Pain Products that were dispensed by MSB Rx, Taira Rx, and KZ Pharmacy.  The payment of such kickbacks was made at or near the time the prescriptions were issued.

**F.      The Fraudulent Billing for Services Provided by Independent Contractors**

175.    The Defendants' fraudulent scheme also included submission of claims to GEICO seeking payment for services performed by independent contractors. Under the No-Fault Laws, healthcare providers are ineligible to bill or receive payment for goods or services provided by independent contractors – the healthcare services must be provided by the healthcare providers themselves, or by their employees.  See 11 N.Y.C.R.R. § 65-3.11.

176.    Since 2001, the New York State Insurance Department consistently has reaffirmed its longstanding position that professional corporations are not entitled to receive reimbursement under the No-Fault Laws for healthcare providers performing services as independent contractors. See DOI Opinion Letter, February 21, 2001 ("where the health services are performed by a provider who is an independent contractor with the PC and is not an employee under the direct supervision of a PC owner, the PC is not authorized to bill under No-Fault as a licensed provider of those services");  DOI Opinion Letter, February 5, 2002 (refusing to modify position set forth in 2-11-01 Opinion letter despite a request from the New York State Medical Society); DOI Opinion Letter, March 11, 2002 ("If the physician has contracted with the PC as an independent contractor, and is not an employee or shareholder of the PC, such physician may not represent himself or herself as an employee of the PC eligible to bill for health services rendered on behalf of the PC, under the New York Comprehensive Motor Vehicle Insurance Reparations Act…"); DOI Opinion Letter, October 29, 2003 (extending the independent contractor rule to hospitals); DOI Opinion Letter, March 21, 2005 (DOI refused to modify its earlier opinions based upon interpretations of the Medicare statute issued by the CMS).

177.    The pharmacists and pharmacy technicians that prepared and dispensed the Fraudulent Pain Products billed to GEICO through Taira Rx and KZ Pharmacy were not genuine employees of those companies, but were controlled by Bassanell and/or employed by his company, MSB Rx.

178.    Even so, the Defendants routinely submitted charges to GEICO and other insurers under the tax identification numbers of Taira Rx and KZ Pharmacy for Fraudulent Pain Products that falsely represented that the goods and services were provided by employees of Taira Rx and KZ Pharmacy.

179.    To the extent that they were provided in the first instance, all of the Fraudulent Pain Products billed through Taira Rx and KZ Pharmacy were prepared and dispensed by pharmacists and technicians that were treated as independent contractors.

180.    For instance, Taira Rx and KZ Pharmacy:

   (i)     paid the pharmacists and technicians, either in whole or in part, on a 1099 basis rather than a W-2 basis, or arranged for them to be paid by another corporate entity entirely;

   (ii)    established an understanding with the pharmacists and pharmacy technicians that they were independent contractors, rather than employees;

   (iii)   paid no employee benefits to the pharmacists and pharmacy technicians;

   (iv)    failed to secure and maintain W-4 or I-9 forms for the pharmacists and pharmacy technicians;

   (v)     failed to withhold federal, state or city taxes on behalf of the pharmacists and pharmacy technicians;

   (ix)    failed to cover the pharmacists and pharmacy technicians for either unemployment or workers' compensation benefits;

(x)    filed corporate and payroll tax returns (e.g. Internal Revenue Service ("IRS") forms 1120 and 941) that represented to the IRS and to the New York State Department of Taxation that the pharmacists and pharmacy technicians were independent contractors;  and/or

(xi)   did not actually direct or control the work performed by the pharmacists and pharmacy technicians since they all worked under the control of Bassanell and/or his company MSB Rx.

181.    By treating the pharmacists and pharmacy technicians as independent contractors, the Defendants realized significant economic benefits – for instance:

(i)    avoiding the obligation to collect and remit income tax as required by 26 U.S.C. § 3102;

(ii)   avoiding payment of the FUTA excise tax required by 26 U.S.C. § 3301 (6.2 percent of all income paid);

(iii)  avoiding payment of the FICA excise tax required by 26 U.S.C. § 3111 (7.65 percent of all income paid);

(iv)   avoiding payment of workers' compensation insurance as required by New York Workers' Compensation Law § 10;

(v)    avoiding the need to secure any malpractice insurance; and

(vi)   avoiding claims of agency-based liability arising from work performed by the pharmacists or pharmacy technicians.

182.    Because the pharmacists and pharmacy technicians that prepared and dispensed the Fraudulent Pain Products were independent contractors, Taira Rx and KZ Pharmacy never had any right to bill for or collect No-Fault Benefits in connection with those services.

183.    The Defendants billed for the Fraudulent Pain Products as if they were prepared and dispensed by actual employees of Taira Rx and KZ Pharmacy to make it appear as if the services were eligible for reimbursement. The Defendants' misrepresentations were consciously designed to mislead GEICO into believing that it was obligated to pay for these services, when in fact GEICO was not.

G.    **The Fraudulent Billing the Defendants Submitted or Caused to be Submitted to GEICO**

184.    Every prescription product, whether a brand name or generic drug, has a designated national drug code ("NDC") – a unique 10-digit code that identifies the drug itself, the vendor of the drug and the quantity in which the drug was packaged.  Each NDC number has an assigned Average Wholesale Price ("AWP").

185.    Each NDC (and, thus, the AWP) for a particular prescription product differs depending on both the particular supplier the drug is purchased from and the quantity in which the drug is obtained.  The same drug can have a different NDC number if it is purchased from a different supplier and/or in different quantities.

186.    The maximum amount that a healthcare provider may charge for a medically necessary prescription drug or product is based upon the drug's NDC number. With respect to compounded products, the maximum that a healthcare provider may charge is based on each individual ingredient included in the compounded product and their corresponding NDC numbers and AWPs.

187.    Pursuant to 12 N.Y.C.R.R. §§ 440.5(a) and (d) (the "Pharmacy Fee schedule"), for each brand name drug (or ingredient included in a compounded product) a provider may charge no more than the AWP assigned to that particular NDC on the day the drug was dispensed minus 12% of the AWP, plus a single dispensing fee of $4.00.

188.    For each generic drug (or ingredient included in a compounded product) the provider may charge no more than the AWP assigned to that particular NDC on the day the drug was dispensed minus 20% of the AWP, plus a single dispensing fee of $5.00.

189.    AWP is defined by 12 N.Y.C.R.R. § 440.2(a) as:

"[t]he average wholesale price of a prescription drug as provided in the most current release of the Red Book published by Thomson Reuters or Medi-Span Master Drug Database by Wolters Kluwer Health or any successor publisher, on the day a prescription drug is dispensed or other nationally recognized drug pricing index adopted by the Chair or Chair's designee."

190.    When a pharmacist bills for dispensing prescription drugs (including compounded products), it must bill based on the actual NDC number (and the assigned AWP) for that drug or compound drug ingredient.  It cannot use the NDC of the same ingredient available from a different supplier and/or purchased in different quantities in order to inflate the assigned AWP.

191.    The Pharmacy Defendants purported to provide the Fraudulent Pain Products, including the Fraudulent Compounded Drugs, directly to GEICO Insureds, and sought reimbursement directly from GEICO pursuant to executed "Assignment of Benefit" ("AOB") forms.  With regard to compounded products, MSB Rx, Taira Rx, and KZ Pharmacy's bills list each ingredient separately along with the corresponding charge for each.  The total billed amount for MSB Rx and Taira Rx's compounded products ranges as high as $2,364.00 for a single Fraudulent Pain Product.

192.    In support of its charges, the Pharmacy Defendants submitted: (i) the Prescribing Defendants' prescription forms, bearing the pre-printed or rubber-stamped name and formula of the prescription drug or compounded drug product; (ii) a "No-Fault" form, known as an NF-3 Form, which includes the purported NDC numbers, units, and corresponding charges for each drug or ingredient in the billed-for Fraudulent Compounded Drugs; (iii) an invoice from the Pharmacy Defendants listing the quantities of the drug or ingredients in the Fraudulent Compounded Drugs, the name of the prescribing physician, and the total amount due; and (iv) the AOB in which the Insured assigned their benefits to the Pharmacy Defendants.

193.    The NDC numbers listed on the NF-3 Forms submitted by the Pharmacy Defendants identify the AWPs for each of the prescriptions drugs or compound drug ingredients contained within the Fraudulent Compounded Drugs.

194.    Notably, however, the Pharmacy Defendants never submitted its purchase invoices demonstrating how much the Pharmacy Defendants paid the supplier for the ingredients or the quantities in which the ingredients were obtained.

195.    The Pharmacy Defendants also refused to identify for GEICO the number of prescriptions dispensed for the Fraudulent Compounded Drugs, notwithstanding the Pharmacy Defendants' legal obligation to maintain appropriate records of prescriptions.

196.    The Pharmacy Defendants, purely to exploit the No-Fault reimbursement regulations relating to pharmaceutical products, intentionally assembled numerous individual ingredients to produce each of the Fraudulent Compounded Drugs.

197.    The combination of numerous drugs in each of the Fraudulent Compounded Drugs have no proven, documented superior efficacy than commercially available, FDA products available at a fraction of the cost.

198.    The sole reason for the Pharmacy Defendants' intentional assembling of large combinations of drugs was to inflate the charges and maximize their billing to exploit New York automobile insurance carriers, as pharmacy providers are ordinarily statutorily reimbursed for each individual ingredient contained in a compounded drug product.

## V.    **The Defendants' Submission of Fraudulent NF-3 Forms to GEICO**

199.    To support the fraudulent charges, statutorily prescribed claim forms for No-Fault Benefits consistently have been submitted to GEICO by and on behalf of MSB Rx, Taira Rx, and

KZ Pharmacy seeking payment for the pharmaceuticals for which it is ineligible to received payment.

200.    These forms, including NF-3 forms, HCFA-1500 forms and other supporting records that the Defendants submitted or caused to be submitted to GEICO, were false and misleading in the following material respects:

(i)     The NF-3 forms, HCFA-1500 forms, and other supporting records uniformly misrepresented to GEICO that the Fraudulent Pain Products were medically necessary. In fact, the Pharmacy Defendants produced and dispensed the Fraudulent Pain Products pursuant to predetermined fraudulent treatment protocols solely to financially enrich themselves, without regard for the topical efficacy of the Fraudulent Pain Product or the availability of a wide range of commercially available, FDA-approved medications or OTC medications proven to have therapeutic effects available at a fraction of the cost.

(ii)    The NF-3 forms, HCFA-1500 forms, and other supporting records uniformly misrepresented to GEICO that the Pharmacy Defendants complied with all material licensing laws and, therefore, are eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12). In fact, the Pharmacy Defendants did not comply with all material licensing laws in that the Defendants participated in illegal, collusive agreements in which the Pharmacy Defendants solicited and received formulaic and medically unnecessary prescriptions from licensed physicians and/or their associates for the Fraudulent Pain Products produced by MSB Rx and Taira Rx, in violation of law; and

(iii)   The NF-3 forms, HCFA-1500 forms, and other supporting records uniformly misrepresented to GEICO that the Pharmacy Defendants complied with all material licensing laws and, therefore, are eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12). In fact, the Pharmacy Defendants did not comply with all material licensing laws in that they engaged in illegal bulk compounding by producing and dispensing large quantities of the Fraudulent Compounded Drugs in set formulations, in violation of Federal and New York State regulatory and licensing requirements imposed on drug

manufacturers and outsourcing facilities, rendering the Pharmacies ineligible to receive reimbursement for No-Fault insurance benefits.

(iv)   In the case of KZ Pharmacy, the NF-3 forms, HCFA-1500 forms, and other supporting records frequently misrepresented to GEICO that KZ Pharmacy complied with all material licensing laws and, therefore, was eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12). In fact, with respect to any prescription product dispensed by KZ Pharmacy prior to May 8, 2018, KZ Pharmacy was ineligible to receive reimbursement for No-Fault insurance benefits because it was not a licensed pharmacy in New York State.

(v)   In the case of Taira Rx and KZ Pharmacy, the NF-3 forms, HCFA-1500 forms, and other supporting records frequently misrepresented to GEICO that Taira Rx and KZ Pharmacy were the direct providers of the services rendered, and were eligible to receive No-Fault Benefits.  In fact, the Defendants submitted hundreds of thousands of dollars in billing to GEICO for goods and services provided by independent contractors, rendering the pharmacies ineligible to receive reimbursement for No-Fault insurance benefits.

## VI.   The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance

201.   The Defendants are legally and ethically obligated to act honestly and with integrity in connection with the provision of pharmaceutical products to Insureds and the billing they submit or cause to be submitted to GEICO seeking reimbursement for these products.

202.   To induce GEICO to promptly pay the charges for the Fraudulent Compounded Drugs, the Defendants have gone to great lengths to systematically conceal their fraud.

203.   Specifically, the Defendants knowingly have misrepresented and concealed facts in an effort to prevent discovery that the Defendants (i) violated licensing laws governing manufacturers and large-scale drug outsourcing facilities of compounded drugs; (ii) have been involved in collusive, kickback arrangements to generate voluminous prescriptions pursuant to a fraudulent predetermined treatment and billing protocol, without regard to genuine patient care;

and (iii) prescribed and dispensed Fraudulent Pain Products that have no efficacious value and grossly exceed the cost of effective FDA-approved medications; (v) intentionally assembled large combinations of drugs into purported compounded pain creams solely to inflate the billing to GEICO and other New York insurance companies; (vi) unlawfully submitted billing to GEICO through KZ Pharmacy, despite not possessing a New York State pharmacy license; and (vii) unlawfully submitted billing to GEICO through Taira Rx and KZ Pharmacy despite billing for services of independent contractors.

204.    In accordance with the No-Fault Laws, GEICO either: (i) timely denied the pending claims for No-Fault Benefits submitted through the Pharmacies; (ii) timely issued requests for additional verification with respect to the pending claims for No-Fault Benefits submitted through the Pharmacies, yet failed to obtain complete compliance with the requests for additional verification; or else (iii) the time in which to deny the pending claims for No-Fault Benefits submitted through the Pharmacies, or to request additional verification of those claims, has not yet expired.

205.    The Defendants have hired law firms to pursue collection of the fraudulent charges from GEICO and other insurers. These law firms routinely file expensive and time-consuming litigation against GEICO and other insurers if the charges are not promptly paid in full.  In fact, the Pharmacies continues to have legal counsel pursue collection against GEICO and other insurers without regard for the fact that the Pharmacies have been engaged in fraud.

206.    GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days.  The facially-valid documents that were submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations described above, were designed to and did cause GEICO to rely upon them. As a result, GEICO

has incurred damages of approximately $1,542,000.00 representing payments made by GEICO based upon the fraudulent charges submitted by the Defendants, which damages are to be trebled under 18 U.S.C. § 1962(c)), et. al to $4,626,000.00.

207.    Based upon the Defendants' material misrepresentations and other affirmative acts to conceal their fraud from GEICO, GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

## THE FIRST CLAIM FOR RELIEF
### Against All Defendants
### (Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)

208.    GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

209.    There is an actual case in controversy between GEICO and the Defendants regarding approximately $2,009,400.49 in fraudulent billing for the Fraudulent Pain Products that MSB Rx, Taira Rx, and KZ Pharmacy have submitted to GEICO.

210.    MSB Rx, Taira Rx, and KZ Pharmacy have no right to receive payment for any pending bills submitted to GEICO because:

      (i)     the Defendants made false and fraudulent misrepresentations to GEICO in that the Fraudulent Pain Products were not medically necessary and were provided – to the extent they were provided at all – pursuant to predetermined fraudulent treatment protocols designed solely to financially enrich themselves, based on prescriptions solicited by MSB Rx, Taira Rx, and KZ Pharmacy without regard for the topical efficacy of the Fraudulent Pain Products or the availability of a wide range of commercially available, FDA-approved medications or proven over-the-counter ("OTC") medications shown to have therapeutic effects available at a fraction of the cost;

      (ii)    the Defendants engaged in illegal, collusive agreements in which the Pharmacy Defendants solicited and received formulaic and medically unnecessary prescriptions from the Prescribing

Defendants for the Fraudulent Pain Products, including the Fraudulent Compounded Drugs, produced and dispensed by MSB Rx, Taira Rx, and KZ Pharmacy in violation of law;

(iii)    the Pharmacy Defendants engaged in illegal bulk compounding by specializing in producing and dispensing large quantities of the Fraudulent Compounded Drugs in set formulations, in violation of Federal and New York State regulatory and licensing requirements imposed on drug manufacturers and outsourcing facilities, rendering it ineligible to receive reimbursement for No-Fault insurance benefits;

(iv)    in the case of KZ Pharmacy, the Defendants submitted hundreds of thousands of dollars in billing to GEICO prior to the pharmacy obtaining a New York State pharmacy license, rendering KZ Pharmacy ineligible to receive reimbursement for No-Fault insurance benefits;

(v)    in the case of Taira Rx and KZ Pharmacy, the Defendants submitted hundreds of thousands of dollars in billing to GEICO for goods and services provided by independent contractors, rendering the pharmacies ineligible to receive reimbursement for No-Fault insurance benefits.

211.    Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that MSB Rx, Taira Rx, and KZ Pharmacy have no right to receive payment for any pending bills submitted to GEICO.

## THE SECOND CLAIM FOR RELIEF
### Against Bassanell
### (Violation of RICO, 18 U.S.C. § 1962(c))

212.    GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

213.    MSB Rx is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

214.    Bassanell knowingly has conducted and/or participated, directly or indirectly, in the conduct of MSB Rx's affairs through a pattern of racketeering activity consisting of repeated

violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for over two years, seeking payments that MSB Rx was not eligible to receive under the No-Fault Laws because: (i) the billed-for services were not medically necessary and were billed pursuant to predetermined fraudulent protocols solely to financially enrich the Defendants, based on "rubber-stamped" prescriptions solicited by MSB Rx without regard for the topical efficacy of the prescribed drugs or the availability of a wide range of commercially available, FDA-approved medications and OTC medications proven to have therapeutic effects available at a fraction of the cost; (ii) the Defendants participated in illegal, collusive agreements in which MSB Rx solicited and received formulaic and medically unnecessary prescriptions from the Prescribing Defendants for the Fraudulent Pain Products, including the Fraudulent Compounded Drugs produced by MSB Rx, in violation of law; and (iii) MSB Rx engaged in illegal bulk compounding by specializing in producing and dispensing large quantities of the Fraudulent Compounded Drugs in set formulations, in violation of Federal and New York State regulatory and licensing requirements imposed on drug manufacturers and outsourcing facilities, rendering it ineligible to receive reimbursement for No-Fault insurance benefits.

215.    MSB Rx's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Bassanell operated MSB Rx, inasmuch as MSB Rx never was eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore were essential in order for MSB Rx to function.  Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that

the Defendants continue to attempt collection on the fraudulent billing submitted through MSB Rx to the present day.

216.    MSB Rx is engaged in inherently unlawful acts inasmuch as its very existence is an unlawful act, considering that it was created to exploit the New York "No-Fault insurance system, engage in illegal, collusive arrangements involving medically unnecessary pain products, including compounded drugs, and bill pursuant to predetermined fraudulent protocols solely to financially enrich the Defendants.   These inherently unlawful acts are taken by MSB Rx in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent No-Fault billing.

217.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid approximately $472,186.13 pursuant to the fraudulent bills submitted by the Defendants MSB Rx.

218.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## THE THIRD CLAIM FOR RELIEF
### Against Bassanell and the Prescribing Defendants
### (Violation of RICO, 18 U.S.C. § 1962(d))

219.    GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

220.    MSB Rx is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

221.    Bassanell and the Prescribing Defendants are employed by and/or associated with the MSB Rx enterprise.

222.    Bassanell and the Prescribing Defendants knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the MSB Rx enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for over two years seeking payments that MSB Rx was not eligible to receive under the No-Fault Laws because: (i) the billed-for services were not medically necessary and were billed pursuant to predetermined fraudulent protocols solely to financially enrich the Defendants, based on "rubber-stamped" prescriptions solicited by MSB Rx without regard for the topical efficacy of the prescribed drugs or the availability of a wide range of commercially available, FDA-approved medications and OTC medications proven to have therapeutic effects available at a fraction of the cost; (ii) the Defendants participated in illegal, collusive agreements in which MSB Rx solicited and received formulaic and medically unnecessary prescriptions from the Prescribing Defendants for the Fraudulent Pain Products, including the Fraudulent Compounded Drugs produced by MSB Rx, in violation of law; and (iii) MSB Rx engaged in illegal bulk compounding by specializing in producing and dispensing large quantities of the Fraudulent Compounded Drugs in set formulations, in violation of Federal and New York State regulatory and licensing requirements imposed on drug manufacturers and outsourcing facilities, rendering it ineligible to receive reimbursement for No-Fault insurance benefits.

223.    Bassanell and the Prescribing Defendants knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

224.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid approximately $472,186.13 pursuant to the fraudulent bills submitted by the Defendant MSB Rx.

225.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### THE FOURTH CLAIM FOR RELIEF
**Against Bassanell and MSB Rx**
**(Common Law Fraud)**

226.    GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

227.    Bassanell and MSB Rx intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of hundreds of fraudulent charges seeking payment for the Fraudulent Pain Products.

228.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that the billed-for services were medically necessary and properly billed in accordance with the Pharmacy Fee Schedule, when in fact the billed-for services were not medically necessary and were billed pursuant to predetermined fraudulent protocols solely to financially enrich the Defendants, based on "rubber-stamped" prescriptions solicited by MSB Rx without regard for the topical efficacy of the prescribed drugs or the availability of a wide range of commercially available, FDA-approved medications or OTC medications proven to have therapeutic effects available at a fraction of the cost; (ii) in every claim, the representation that MSB Rx was properly licensed and, therefore,

54

eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the Defendants participated in illegal, collusive agreements in which MSB Rx solicited and received formulaic and medically unnecessary prescriptions from licensed physicians and/or their associates for the Fraudulent Pain Products, including the Fraudulent Compounded Drugs produced by MSB Rx, in violation of law; and (iii) in every claim, the representation that MSB Rx was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact MSB Rx engaged in illegal bulk compounding by specializing in producing and dispensing large quantities of the Fraudulent Compounded Drugs in set formulations, in violation of Federal and New York State regulatory and licensing requirements imposed on drug manufacturers and outsourcing facilities, rendering it ineligible to receive reimbursement for No-Fault insurance benefits.

229.     Bassanell and MSB Rx intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through MSB Rx that were not compensable under the No-Fault Laws.

230.     GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid approximately $472,186.13 pursuant to the fraudulent bills submitted, or caused to be submitted, by the Defendants through MSB Rx.

231.     The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

232.     Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## THE FIFTH CLAIM FOR RELIEF
### Against the Prescribing Defendants
### (Aiding and Abetting Fraud)

233.    GEICO incorporates, as though fully set forth herein, each and every allegation set forth above.

234.    The Prescribing Defendants knowingly aided and abetted the fraudulent scheme that was perpetrated on GEICO by Bassanell and MSB Rx.

235.    The acts of the Prescribing Defendants in furtherance of the fraudulent scheme include knowingly purporting to prescribe the Fraudulent Pain Products, including the Fraudulent Compounded Drugs, and permitting their names to be used in the billing, prescription records and treatment reports submitted in support of the Fraudulent Compounded Drugs despite their knowledge that MSB Rx was ineligible to bill for or to collect No-Fault Benefits in connection with the Fraudulent Services because: (i) the Defendants produced, prescribed, and/or dispensed the Fraudulent Pain Products pursuant to predetermined fraudulent treatment protocols solely to financially enrich themselves, based on prescriptions solicited by MSB Rx without regard for the topical efficacy of the drugs or the availability of a wide range of commercially available, FDA-approved medications and OTC medications proven to have therapeutic effects available at a fraction of the cost; (ii) the Defendants participated in illegal, collusive agreements in which MSB Rx solicited and received formulaic and medically unnecessary prescriptions from licensed physicians and/or their associates for the Fraudulent Pain Products, including the Fraudulent Compounded Drugs produced by MSB Rx, in violation of law; and (iii) MSB Rx engaged in illegal bulk compounding by specializing in creating and dispensing large quantities of the Fraudulent Compounded Drugs in set formulations, in violation of Federal and New York

State regulatory and licensing requirements imposed on drug manufacturers and outsourcing facilities, rendering it ineligible to receive reimbursement for No-Fault insurance benefits.

236.    The conduct of the Prescribing Defendants in furtherance of the fraudulent scheme was significant and material.  The conduct of the Prescribing Defendants was a necessary part of and was critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for MSB Rx to obtain payment from GEICO and from other insurers.

237.    The Prescribing Defendants aided and abetted the fraudulent scheme in a calculated effort to induce GEICO into paying charges to MSB Rx for medically unnecessary and illusory Fraudulent Pain Products that were not compensable under the No-Fault Laws, because they sought to continue profiting through the fraudulent scheme.

238.    The conduct of the Prescribing Defendants caused GEICO to pay approximately $472,186.13 pursuant to the fraudulent bills that the Defendants submitted or caused to be submitted through MSB Rx.

239.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

240.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### THE SIXTH CLAIM FOR RELIEF
### Against Bassenell and MSB Rx
### (Unjust Enrichment)

241.    GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

242.     As set forth above, Bassanell and MSB Rx have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

243.     When GEICO paid the bills and charges submitted by or on behalf of MSB Rx for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

244.     Bassanell and MSB Rx have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Defendants voluntarily accepted and profited from, as a result of, among other things, the payments received and the receipt of kickback payments, notwithstanding their improper, unlawful, and unjust fraudulent billing scheme.

245.     The Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

246.     By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in the approximate amount of $472,186.13.

**THE SEVENTH CLAIM FOR RELIEF**
**Against Bassanell and Borukhov**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

247.     GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

248.     Taira Rx is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

249.     Bassanell and Borukhov knowingly have conducted and/or participated, directly or indirectly, in the conduct of Taira Rx's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent

charges on a continuous basis for over two years, seeking payments that Taira Rx was not eligible to receive under the No-Fault Laws because: (i) the billed-for services were not medically necessary and were billed pursuant to predetermined fraudulent protocols solely to financially enrich the Defendants, based on "rubber-stamped" prescriptions solicited by Taira Rx without regard for the topical efficacy of the prescribed drugs or the availability of a wide range of commercially available, FDA-approved medications and OTC medications proven to have therapeutic effects available at a fraction of the cost; (ii) the Defendants participated in illegal, collusive agreements in which Taira Rx solicited and received formulaic and medically unnecessary prescriptions from the Prescribing Defendants for the Fraudulent Pain Products, including the Fraudulent Compounded Drugs produced by Taira Rx, in violation of law; (iii) Taira Rx engaged in illegal bulk compounding by specializing in producing and dispensing large quantities of the Fraudulent Compounded Drugs in set formulations, in violation of Federal and New York State regulatory and licensing requirements imposed on drug manufacturers and outsourcing facilities, rendering it ineligible to receive reimbursement for No-Fault insurance benefits; and (iv) Taira Rx submitted billing to GEICO for goods and services provided by independent contractors in violation of New York law.

250.    Taira Rx's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Bassanell and Borukhov operated Taira Rx, inasmuch as Taira Rx never was eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore were essential in order for Taira Rx to function.  Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as

does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Taira Rx to the present day.

251.    Taira Rx is engaged in inherently unlawful acts inasmuch as its very existence is an unlawful act, considering that it was created to exploit the New York No-Fault insurance system, engage in illegal, collusive arrangements involving medically unnecessary pain products, including compounded drugs, and billed pursuant to predetermined fraudulent protocols solely to financially enrich the Defendants.  These inherently unlawful acts are taken by Taira Rx in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent No-Fault billing.

252.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid approximately $731,200.21 pursuant to the fraudulent bills submitted by the Defendants Taira Rx.

253.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### THE EIGHTH CLAIM FOR RELIEF
**Against Bassanell, Borukhov, and the Prescribing Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

254.    GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

255.    Taira Rx is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

256.    Bassanell, Borukhov, and the Prescribing Defendants are employed by and/or associated with the Taira Rx enterprise.

60

257.    Bassanell, Borukhov, and the Prescribing Defendants knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Taira Rx enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for over two years seeking payments that Taira Rx was not eligible to receive under the No-Fault Laws because: (i) the billed-for services were not medically necessary and were billed pursuant to predetermined fraudulent protocols solely to financially enrich the Defendants, based on "rubber-stamped" prescriptions solicited by Taira Rx without regard for the topical efficacy of the prescribed drugs or the availability of a wide range of commercially available, FDA-approved medications and OTC medications proven to have therapeutic effects available at a fraction of the cost; (ii) the Defendants participated in illegal, collusive agreements in which Taira Rx solicited and received formulaic and medically unnecessary prescriptions from the Prescribing Defendants for the Fraudulent Pain Products, including the Fraudulent Compounded Drugs produced by Taira Rx, in violation of law; (iii) Taira Rx engaged in illegal bulk compounding by specializing in producing and dispensing large quantities of the Fraudulent Compounded Drugs in set formulations, in violation of Federal and New York State regulatory and licensing requirements imposed on drug manufacturers and outsourcing facilities, rendering it ineligible to receive reimbursement for No-Fault insurance benefits; and (iv) Taira Rx submitted billing to GEICO for goods and services provided by independent contractors in violation of New York law.

258.    Bassanell, Borukhov, and the Prescribing Defendants knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other

insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

259.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid approximately $731,200.21 pursuant to the fraudulent bills submitted by the Defendant Taira Rx.

260.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**THE NINTH CLAIM FOR RELIEF**
**Against Bassanell, Borukhov, and Taira Rx**
**(Common Law Fraud)**

261.    GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

262.    Bassanell, Borukhov, and Taira Rx intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of hundreds of fraudulent charges seeking payment for the Fraudulent Pain Products.

263.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that the billed-for services were medically necessary and properly billed in accordance with the Pharmacy Fee Schedule, when in fact the billed-for services were not medically necessary and were billed pursuant to predetermined fraudulent protocols solely to financially enrich the Defendants, based on "rubber-stamped" prescriptions solicited by Taira Rx without regard for the topical efficacy of the prescribed drugs or the availability of a wide range of commercially available, FDA-approved

62

medications or OTC medications proven to have therapeutic effects available at a fraction of the cost; (ii) in every claim, the representation that Taira Rx was properly licensed and, therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the Defendants participated in illegal, collusive agreements in which Taira Rx solicited and received formulaic and medically unnecessary prescriptions from licensed physicians and/or their associates for the Fraudulent Pain Products, including the Fraudulent Compounded Drugs produced by Taira Rx, in violation of law; (iii) in every claim, the representation that Taira Rx was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact Taira Rx engaged in illegal bulk compounding by specializing in producing and dispensing large quantities of the Fraudulent Compounded Drugs in set formulations, in violation of Federal and New York State regulatory and licensing requirements imposed on drug manufacturers and outsourcing facilities, rendering it ineligible to receive reimbursement for No-Fault insurance benefits; and (iv) in many claims, the representation that Taira Rx was eligible to receive No-Fault Benefits when in fact Taira Rx submitted billing to GEICO for goods and services provided by independent contractors in violation of New York law.

264.    Bassanell, Borukhov, and Taira Rx intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Taira Rx that were not compensable under the No-Fault Laws.

265.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid approximately $731,200.21 pursuant to the fraudulent bills submitted, or caused to be submitted, by the Defendants through Taira Rx.

266.     The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

267.     Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**THE TENTH CLAIM FOR RELIEF**
**Against the Prescribing Defendants**
**(Aiding and Abetting Fraud)**

268.     GEICO incorporates, as though fully set forth herein, each and every allegation set forth above.

269.     The Prescribing Defendants knowingly aided and abetted the fraudulent scheme that was perpetrated on GEICO by Bassanell, Borukhov, and Taira Rx.

270.     The acts of the Prescribing Defendants in furtherance of the fraudulent scheme include knowingly purporting to prescribe the Fraudulent Pain Products, including the Fraudulent Compounded Drugs, and permitting their names to be used in the billing, prescription records and treatment reports submitted in support of the Fraudulent Compounded Drugs despite their knowledge that Taira Rx was ineligible to bill for or to collect No-Fault Benefits in connection with the Fraudulent Services because: (i) the Defendants produced, prescribed, and/or dispensed the Fraudulent Pain Products pursuant to predetermined fraudulent treatment protocols solely to financially enrich themselves, based on prescriptions solicited by Taira Rx without regard for the topical efficacy of the prescribed drugs or the availability of a wide range of commercially available, FDA-approved medications and OTC medications proven to have therapeutic effects available at a fraction of the cost; (ii) the Defendants participated in illegal, collusive agreements in which Taira Rx solicited and received formulaic and medically

unnecessary prescriptions from licensed physicians and/or their associates for the Fraudulent Pain Products, including the Fraudulent Compounded Drugs produced by Taira Rx, in violation of law; (iii) Taira Rx engaged in illegal bulk compounding by specializing in creating and dispensing large quantities of the Fraudulent Compounded Drugs in set formulations, in violation of Federal and New York State regulatory and licensing requirements imposed on drug manufacturers and outsourcing facilities, rendering it ineligible to receive reimbursement for No-Fault insurance benefits; and (iv) Taira Rx utilized independent contractors in violation of law.

271.    The conduct of the Prescribing Defendants in furtherance of the fraudulent scheme was significant and material.   The conduct of the Prescribing Defendants was a necessary part of and was critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Taira Rx to obtain payment from GEICO and from other insurers.

272.    The Prescribing Defendants aided and abetted the fraudulent scheme in a calculated effort to induce GEICO into paying charges to Taira Rx for medically unnecessary and illusory Fraudulent Pain Products that were not compensable under the No-Fault Laws, because they sought to continue profiting through the fraudulent scheme.

273.    The conduct of the Prescribing Defendants caused GEICO to pay approximately $731,200.21 pursuant to the fraudulent bills that the Defendants submitted or caused to be submitted through Taira Rx.

274.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

275.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## THE ELEVENTH CLAIM FOR RELIEF
**Against Bassenell, Borukhov, and Taira Rx**
**(Unjust Enrichment)**

276.    GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

277.    As set forth above, Bassanell, Borukhov and Taira Rx have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

278.    When GEICO paid the bills and charges submitted by or on behalf of Taira Rx for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

279.    Bassanell, Borukhov, and Taira Rx have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Defendants voluntarily accepted and profited from, as a result of, among other things, the payments received and the receipt of kickback payments, notwithstanding their improper, unlawful, and unjust fraudulent billing scheme.

280.    The Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

281.    By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in the approximate amount of $731,200.21.

## THE TWELFTH CLAIM FOR RELIEF
### Against Bassanell, Hakimi, and KZ Pharmacy
### (Common Law Fraud)

282.    GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

283.    Bassanell, Hakimi, and KZ Pharmacy intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of hundreds of fraudulent charges seeking payment for the Fraudulent Pain Products.

284.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that the billed-for services were medically necessary and properly billed in accordance with the Pharmacy Fee Schedule, when in fact the billed-for services were not medically necessary and were billed pursuant to predetermined fraudulent protocols solely to financially enrich the Defendants, based on "rubber-stamped" prescriptions solicited by KZ Pharmacy without regard for the topical efficacy of the prescribed drugs or the availability of a wide range of commercially available, FDA-approved medications or OTC medications proven to have therapeutic effects available at a fraction of the cost; (ii) in every claim, the representation that KZ Pharmacy was properly licensed and, therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact Defendants participated in illegal, collusive agreements in which KZ Pharmacy solicited and received formulaic and medically unnecessary prescriptions from licensed physicians and/or their associates for the Fraudulent Pain Products, including the Fraudulent Compounded Drugs, in violation of law; (iii) in many claims, the representation that KZ Pharmacy was properly licensed and, therefore, eligible to receive No-

Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact KZ Pharmacy submitted thousands of dollars of billing to GEICO prior to obtaining a New York State Pharmacy license; and (iv) in many claims, the representation that KZ Pharmacy was eligible to receive No-Fault Benefits when in fact KZ Pharmacy submitted billing to GEICO for goods and services provided by independent contractors in violation of New York law.

285.   Bassanell, Hakimi, and KZ Pharmacy intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through KZ Pharmacy that were not compensable under the No-Fault Laws.

286.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid approximately $331,488.73 pursuant to the fraudulent bills submitted, or caused to be submitted, by the Defendants through KZ Pharmacy.

287.   The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

288.   Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### THE THIRTEENTH CLAIM FOR RELIEF
**Against Bassanell, Hakimi and KZ Pharmacy**
**(Unjust Enrichment)**

289.   GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

290.     As set forth above, Bassanell, Hakimi and KZ Pharmacy have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

291.     When GEICO paid the bills and charges submitted by or on behalf of KZ Pharmacy for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

292.     Bassanell, Hakimi, and KZ Pharmacy have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Defendants voluntarily accepted and profited from, as a result of, among other things, the payments received and the receipt of kickback payments, notwithstanding their improper, unlawful, and unjust fraudulent billing scheme.

293.     The Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

294.     By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in the approximate amount of $331,488.73.

## JURY DEMAND

295.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demands a trial by jury.

**WHEREFORE**, Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company and GEICO Casualty Company demand that a judgment be entered in their favor and against the Defendants, as follows:

A.     On the First Claim for Relief against the Defendants, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that the Pharmacy Defendants have no

right to receive payment for any pending bills, amounting to approximately $2,145,659.29 submitted to GEICO;

B.      On the Second Claim For Relief against Bassanell, compensatory damages in favor of GEICO in an amount to be determined at trial but approximately $472,186.13, together with treble damages, punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

C.      On the Third Claim For Relief against Bassanell and the Prescribing Defendants, compensatory damages in favor of GEICO in an amount to be determined at trial but approximately $472,186.13, together with treble damages, punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

D.      On the Fourth Claim For Relief against Bassanell and MSB Rx, compensatory damages in favor of GEICO in an amount to be determined at trial but approximately $472,186.13, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

E.      On the Fifth Claim For Relief against the Prescribing Defendants, compensatory damages in favor of GEICO in an amount to be determined at trial but approximately $472,186.13, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper; and

F.      On the Sixth Claim for Relief against Bassanell and MSB Rx, a recovery in favor of GEICO in an amount to be determined at trial but approximately $472,186.13, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper.

G.      On the Seventh Claim For Relief against Bassanell and Borukhov, compensatory damages in favor of GEICO in an amount to be determined at trial but approximately $731,200.21, together with treble damages, punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

H.      On the Eighth Claim For Relief against Bassanell, Borukhov and the Prescribing Defendants, compensatory damages in favor of GEICO in an amount to be determined at trial but approximately $731,200.21, together with treble damages, punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

I.      On the Ninth Claim For Relief against Bassanell, Borukhov, Taira Rx, and the Prescribing Defendants, compensatory damages in favor of GEICO in an amount to be determined at trial but approximately $731,200.21, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

J.      On the Tenth Claim For Relief against the Prescribing Defendants, compensatory damages in favor of GEICO in an amount to be determined at trial but approximately $731,200.21, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper; and

K.      On the Eleventh Claim for Relief against Bassanell, Borukhov and Taira Rx, a recovery in favor of GEICO in an amount to be determined at trial but approximately $731,200.21, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper.

L.      On the Twelfth Claim For Relief against Bassanell, Hakimi, and KZ Pharmacy, compensatory damages in favor of GEICO in an amount to be determined at trial but

approximately $331,488.73, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

M.    On the Thirteenth Claim for Relief against Bassanell, Hakimi, and KZ Pharmacy, a recovery in favor of GEICO in an amount to be determined at trial but approximately $331,488.73, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper.

Dated: Uniondale, New York
       January 11, 2019

RIVKIN RADLER LLP

By: _____
    Michael A. Sirignano (MS 5263)
    Barry I. Levy (BL 2190)
    Joshua D. Smith (JS 3989)
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Plaintiffs, Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company and GEICO Casualty Company*

4002832